IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LOFTY, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:17-CV-159 |
| | § | |
| McKELLY ROOFING, LLC, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO GRANT, IN PART, PLAINTIFF'S MOTION FOR LEAVE
TO FILE AMENDED EXPERT DESIGNATION**

Before the Court is *Plaintiff's Motion for Leave to Amend Expert Designation* filed by plaintiff LOFTY, LLC on March 12, 2018 [ECF 26]. On April 11, 2018, the United States District Judge referred plaintiff's motion to the undersigned United States Magistrate Judge "for recommendation" [ECF 38].[1] For the following reasons, the undersigned recommends plaintiff's motion be GRANTED, IN PART.

I.
STATEMENT OF THE CASE

Pursuant to the Court's *Original Rule 16 Scheduling* Order entered September 1, 2017, plaintiff was required to file a written designation of expert witnesses by November 10, 2017. On October 3, 2017, this deadline was extended to December 18, 2017. On December 18, 2017, plaintiff timely filed *Plaintiff's Written Designation of Expert Witnesses*, designating one (1) retained expert and four (4) non-retained experts to offer testimony, primarily, as to defendant McKELLY ROOFING, LLC's roofing work on

---

[1] The parties have not consented to have the United States Magistrate Judge finally determine this case, or partially consent to have the Magistrate Judge "make final rulings on case dispositive motions, while reserving their right to trial before a District Judge." *See Standing Order of Reference* [ECF 51].

plaintiff's loft apartments. [ECF 10]. As one of its non-retained experts, plaintiff designated Rickey Conradt to testify as to "the scope of work and costs necessary to repair the property."

The modified scheduling order also set a deadline of January 12, 2018 for defendant to file a written designation of expert witnesses, and of January 19, 2018 for plaintiff to provide disclosures of expert testimony required by Rule 26(a)(2) of the Federal Rules of Civil Procedure. The Court subsequently extended these deadlines requiring defendant to file a written designation of expert witnesses by February 2, 2018, and plaintiff to provide Rule 26(a)(2) disclosures by February 9, 2018. On February 2, 2018, defendant timely filed *Defendant's Designation of Expert Witnesses*, designating three (3) retained testifying experts, two (2) of which were to testify as to roofing issues and related damages. [ECF 16]. Plaintiff, while providing defendant with Rule 26(a)(2) disclosures as to its one (1) retained expert, did not provide disclosures as to its four (4) non-retained experts by the Court's February 9th deadline. Discovery in this case proceeded with a modified deadline of April 3, 2018 to complete discovery.

On March 12, 2018, plaintiff filed the instant motion. [ECF 26]. By its motion, plaintiff requested leave to file *Plaintiff's Supplemental Written Designation of Expert Witnesses* (attached to plaintiff's motion), which omits previously designated non-retained expert Conradt due to his unavailability. Plaintiff further requests leave to substitute two (2) new non-retained experts, LeLand Long and John Oldfield, in Conradt's place to testify "regarding the costs to replace the roofing system and their observations at the property." Plaintiff also requested leave to add and/or designate as new non-retained experts Darin Hudson (plaintiff LOFTY's owner/manager/corporate representative who acted as general contractor in the construction and remodeling of the property at issue) and Karla Ross (the independent leasing agent for the property at issue).[2]

Plaintiff indicated Hudson will testify:

---

[2]In its motion, plaintiff also requested leave to modify the scope of the expected testimony of Monty Stone, a non-retained expert identified in plaintiff's original expert designation as having "made remedial repairs to roof after improper installation by Defendant." However, at the May 1, 2018 hearing on the instant motion, plaintiff withdrew Stone as a designated non-retained expert. Consequently, the undersigned will not address the proposed amended testimony description set forth in the proposed *Supplemental Written Designation of Experts*, except to address it as part of the recommendations to the District Judge.

> [r]egarding the presence of interior leaks due to the improperly installed roof . . . about the costs to repair and remediate interior damage and cleaning costs based upon his knowledge and experience as general contractor in the construction and remodeling of the property at issue and estimates obtained by third parties . . .[and] regarding his personal knowledge of tenant leak complaints and costs associated with lost rental income and rent concessions.

Plaintiff indicated Ross will testify:

> [r]egarding tenant leak complaints, the costs associated with lost rental income and rent concessions, occupancy rates, costs associated with relocating tenants during construction, moving and storage expenses, and other ancillary costs anticipated during replacement of the roofing system.

Plaintiff also indicated both Hudson and Ross will "rebut the opinions of Defendant's Experts Steven Boyd and Gary Karrh."[3]

On March 15, 2018, defendant filed a response to plaintiff's motion opposing any supplement and/or modification to the original designation of plaintiff's expert witnesses filed December 18, 2017.[4]

## II.
## LEGAL STANDARD

Plaintiff seeks leave of court to amend its expert witness designations. As the December 18, 2017 deadline for plaintiff to designate expert witnesses has passed, plaintiff is essentially seeking leave of court to amend that portion of the modified scheduling order setting the deadline for designating expert witnesses. Rule 16(b) of the Federal Rules of Civil Procedure permits a scheduling modification upon a showing of good cause by the party seeking modification and only with the court's permission. Fed. R. Civ. P. 16(b)(4); *Reliance Ins. Co. v. Louisiana Land and Exploration Co.,* 110 F.3d 253, 257 (5th Cir. 1997). The "good cause" standard focuses on the diligence of the party seeking the modification to the scheduling order. *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d, 604, 609 (9th Cir. 1992); *Kirk v.*

---

[3]Defendant designated Mr. Boyd as a retained expert to testify regarding "liability, causation, and/or damage issues related to the roof and property at issue in the lawsuit and the damages alleged by Plaintiff," as well as to provide rebuttal testimony to plaintiff's experts. Defendant designated Mr. Karrh as a retained expert to testify "with respect to the alleged damages at issue in the lawsuit," as well as to provide rebuttal testimony to plaintiff's experts' opinions relating to damages or damage evaluations.

[4]In their pleadings, the parties have agreed to substitute Kenneth Netardus for previously designated non-retained expert Kelly Utsinger to testify regarding attorney's fees. Consequently, the undersigned will not discuss this portion of the proposed *Supplemental Written Designation of Experts*, except to address it as part of the recommendations to the District Judge.

*Provident Life & Accident Ins. Co.,* 2002 WL 34359714 (N.D. Tex. February 19, 2002). In determining whether plaintiff has established good cause to modify the scheduling order deadline for plaintiff to designate expert witnesses, this Court considers the following four factors:

(1)  the explanation, if any, for plaintiff's failure to comply with the scheduling order;

(2)  the prejudice to defendant of allowing the new designation of expert witnesses;

(3)  the possibility of curing such prejudice by granting a continuance; and

(4)  the importance of the newly designated expert witnesses' testimony.

*See Barrett v. Atlantic Richfield Co.,* 95 F.3d 375, 380 (5th Cir. 1996). The Court is vested with "broad discretion to preserve the integrity and purpose of the pretrial scheduling order entered . . . pursuant to Rule 16(b)." *Id*. (*quoting Geiserman v. MacDonald,* 893 F.2d 787, 790 (5th Cir. 1990)); *see 1488, Inc. v. Philsec Investment Corp.,* 939 F.2d 1281, 1289 (5th Cir. 1991) ("Adherence to such scheduling orders are critical in maintaining the integrity of judicial proceedings."). Thus, the Court has "wide latitude" and is allowed to act with "intelligent flexibility" in allowing parties to designate experts beyond the deadline. *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1000 (5th Cir. 1998); *Brandon v. Sage Corp.,* 2014 WL 1092078 (W.D. Tex. March 18, 2014).

III.
DISCUSSION AND ANALYSIS

A.  Plaintiff's New Proposed Experts Long and Oldfield

With regard to the first factor, *i.e.*, the explanation, if any, for plaintiff's failure to comply with the scheduling order, plaintiff has provided an adequate explanation as to why it is only now seeking to designate Long and Oldfield as non-retained experts, to wit:  the recent unavailability of Conradt, its previously designated non-retained expert on this subject matter.

The undersigned notes plaintiff represents Long and Oldfield will give expert opinions "regarding

the costs to replace the roofing system and their observations at the property," while Conradt was previously designated to give his expert opinion as to "the scope of work and costs necessary to repair the property." Although worded somewhat differently, the undersigned finds the subject matter of the expected expert opinions from the three individuals to be sufficiently the same. Although plaintiff has not provided the Court with a summary of the facts and opinions to which Conradt was, and Long and Oldfield are, expected to testify, neither party has indicated Long or Oldfield's opinions will vary drastically from Conradt's opinions on these subject matters (again noting, however, that plaintiff did not previously set forth Conradt's facts and opinions in Rule 26(a)(2) disclosures to defendant). Moreover, during the hearing, counsel for plaintiff advised the Court and defendant that he would timely elect either Long or Oldfield to present expert opinions at any trial on the designated subject matters.[5]

Considering this concession by plaintiff, it does not appear defendant McKELLY will be substantially prejudiced by allowing plaintiff to designate both Long and Oldfield as non-retained experts, or in allowing either Long or Oldfield to give expert opinions at trial as to the "costs to replace the roofing system" and their "observations at the property." Moreover, as the circumstances of this case and the recent re-structuring of the Court necessitate the entry of a new Scheduling Order in this case, any prejudice to defendant in allowing the late designation of these experts appears to be minimal or perhaps even cured. The undersigned's additional recommendation (discussed below in Section IV.) that all additional discovery costs incurred as a result of this untimely expert designation be borne by plaintiff provides a further basis for alleviating any prejudice to defendant.[6]

Lastly, the undersigned finds expert opinion as to the scope of work and costs to repair or replace the roofing system based on observations of the property are a necessary component of plaintiff's case. Therefore, the importance of Long and/or Oldfield's expert opinions weighs in favor of allowing their late designation as non-retained experts.

---

[5] At the hearing on this motion, defendant's counsel raised the concern of cumulative expert testimony if both Long and Oldfield testified. In response to that concern, plaintiff's counsel made the above concession.

[6] In fact, during the hearing on this motion, counsel for plaintiff offered to pay for the depositions of the new witnesses.

Consequently, the undersigned recommends *Plaintiff's Motion for Leave to Amend Expert Designation* be GRANTED as follows:

> Non-retained expert Rickey Conradt may be deleted, and non-retained experts LeLand Long and John Oldfield may be added to plaintiff's expert designations to provide expert opinion and analysis as to "the costs to replace the roofing system and their observations at the property" to the extent that their testimony is not cumulative of each other.
>
> Plaintiff shall elect which witness (as between Long and Oldfield) shall testify as to these subject matters and timely inform defendant of its election.
>
> Plaintiff shall <u>not</u> be allowed to use Conradt to provide expert testimony as to this subject matter even if plaintiff learns of Conradt's availability to testify at some future date due to the prejudice to defendant in plaintiff again switching between experts on this subject matter.

If the District Judge adopts the recommendations made herein, plaintiff shall be required to provide Rule 26(a)(2)(C) disclosures to defendant regarding non-retained experts Long and Oldfield in accord with a new Scheduling Order to be entered by the undersigned.

### B.  Plaintiff's New Proposed Expert Hudson

In its proposed *Supplemental Written Designation of Expert Witnesses*, plaintiff indicated Darin Hudson will testify as a non-retained expert as to:

1. the presence of interior leaks at the property "due to the improperly installed roof;"

Plaintiff indicated Hudson will testify, "based upon his knowledge and experience as general contractor in the construction and remodeling of the property at issue and estimates obtained by third parties," as to:

2. the "costs to repair and remediate interior damage" due to the leaks, including cleaning costs;

Plaintiff indicated Hudson will testify, based on his "personal knowledge," as to:

3. tenant leak complaints;

4. costs associated with lost rental income; and

5. rent concessions.

Lastly, plaintiff proposed to designate Hudson to:

    6. provide rebuttal testimony to defendant's experts' opinions on "liability, causation, and/or damage issues related to the roof and property," as well as to all other alleged damages and evaluations.

In its original written designation of expert witnesses, plaintiff timely designated its sole retained expert Neil Hall to testify as to:

    1. "the scope and extent of *any* damage;"

    2. "the causation of *any* damage;" and

    3. "*any* acts or omissions by Defendant causing said damage *to the property*."

[ECF 10] (emphasis added). Despite this broad designation, Hall's written report was limited primarily to his opinions that various roof components were improperly installed at the property and why installation was improper, that there was no plausible explanation for water that had leaked through the roof into the spaces below except for the improper installation of the roof, and his conclusion that the entire roof system must be removed to be decked and replaced with new product. [ECF 47 at 29-31]. In his written report, Hall did not further address interior damages or the causation of interior damages other than to state, "All interior water damage resulting from roof leaks subsequent to the installation of the new roof should be repaired to restore the interior finishes to a pre-loss condition." [*Id.* at 31].

In his March 21, 2018 deposition (taken just over a week after plaintiff filed the instant motion), Hall testified it was his expert opinion that the causation of the interior water leaks was due to the improperly installed roof, but that he was <u>not</u> expressing any opinions as to any remedy or repair costs for any interior water damage. [ECF 49-1 at 49-50, 55, 63] (emphasis added). Even though Hall's report and deposition testimony was limited to his opinion that the interior leaks were a result of the faulty roof and that interior water damage from the roof leaks should be repaired to pre-loss condition, Hall was, nonetheless, originally designated to provide expert testimony as to the causation of *any* damages and the scope and extent of *any* damages "to the property." This designation of expert testimony is broad enough to have included the scope, extent and causation of *interior* damages to the property. Therefore, in designating Hudson as a non-retained expert as to the presence of interior leaks "due to the improperly

installed roof," *i.e.*, as an expert as to the causation of interior damages, and as to the "costs to repair and remediate interior damage" due to the leaks, plaintiff is not proposing to add expert opinion on new subject matters not previously designated.

With regard to plaintiff's designation of Hudson as an expert to testify as to lost rental income and rental concessions, plaintiff proposes Hudson to address entirely new aspects of damages not previously designated as the subject of any expert's testimony, *i.e.*, not damage "to the property." Plaintiff has not explained, in any way, why these two (2) subject matters areas of expert testimony are only now being designated as topics for Hudson's expert opinion and analysis.[7] Similarly, plaintiff has not provided any explanation for not previously and timely designating Hudson as a non-retained expert or otherwise explained its failure to comply with the Scheduling Order deadline. These deficiencies on the part of plaintiff weigh in favor of not allowing the modification of the Scheduling Order to allow a late expert designation and late designation of these subject matters for expert opinion.

Defendant McKELLY deposed Hudson on February 6, 2018, a month prior to plaintiff's supplemental designation regarding Hudson. While it is unclear from the record before the Court whether defendant deposed Hudson either on the issue of interior damage causation or the new damage components that plaintiff now proposes as topics for expert opinion from Hudson,[8] it is clear that having deposed Hudson as a fact witness, the previous deposition presumably only inquired as to Hudson's knowledge of the facts of this case and did not inquire as to Hudson's "expert" opinions as to any of the proposed subject matters. Consequently, defendant would be prejudiced by Hudson's late designation as an expert because defendant was not alerted to or aware it should inquire into and explore Hudson's expert opinions during his prior deposition. Again, however, a new Scheduling Order will be entered in this case, thereby continuing the case and allowing defendant an opportunity to re-depose Hudson as to his

---

[7]Plaintiff states simply, "Preliminary scopes of work and costs for the interiors prepared by Mr. Hudson were disclosed in December 2017 and February 2018."

[8]The undersigned notes that in its October 8, 2017 disclosures, plaintiff stated, "Plaintiff seeks to recover the full cost of actual damage caused by Defendant's actions and omissions, including costs to repair and replace the roofing structure, *the loss of tenants and rents, costs to relocate tenants*, and costs to repair interior damages." [ECF 29-1 at 47].

expert opinions on previously designated subject matters, as well as the new subject matters. Moreover, as the undersigned's recommendation (discussed below in section IV.) provides that all additional discovery costs incurred as a result of this untimely expert designation will be borne by plaintiff, the prejudice to defendant of allowing the modification of the scheduling order to allow late expert designation on late designated subject matters is greatly diminished.

Hudson's expert opinion and analysis as to the causation of interior damages "to the property" is an important and necessary component of plaintiff's case damages. To the extent Hall has already provided his expert opinion as to the causation of certain interior damages "to the property" (see above), Hudson's expert testimony would likely be cumulative. Therefore, any expert testimony from Hudson in this area should not be prejudicial, particularly given the agreement by plaintiff's counsel to not present duplicative expert testimony at trial.

As to Hudson's "personal knowledge" of tenant leak complaints, lost rental income, and rental concessions made to the tenants, the undersigned finds these appear to be fact issues not requiring expert opinion or analysis. Similarly, any testimony from Hudson as to the presence of interior leaks at the property and the costs to repair and remediate interior damage, including cleaning costs (said costs based on third party estimates) appears to be factual testimony not requiring expert opinion or analysis. Nevertheless, to the extent that these areas do require expert testimony from Hudson, the modified scheduling order and agreed-to cost shifting greatly diminish any prejudice to defendant in allowing such designation and future testimony With regard to the late designation of Hudson to give rebuttal testimony to defendant's experts' opinions on "liability, causation, and/or damage issues related to the roof and property," as well as to all other alleged damages and evaluations, the undersigned finds plaintiff's original expert designation stated that it reserved the right to call any expert for the purpose of rebuttal testimony if necessary. [ECF 10 at 3].

Based on the above findings, the undersigned recommends *Plaintiff's Motion for Leave to Amend Expert Designation* be GRANTED as follows:

>Darin Hudson may be designated as a non-retained expert to give expert opinion and analysis on the issue of the causation of interior damages to the property only to the extent such testimony is not cumulative to that of retained expert Hall. Plaintiff shall elect which witness shall testify as to these subject matters and timely inform defendant of its election.
>
>Darin Hudson may be designated as a non-retained expert regarding the presence of interior leaks, costs to repair and remediate interior damage, tenant leak complaints, lost rental income, rent concessions made to the tenants, and as a rebuttal expert witness.

It is further recommended:

>Any supplemental deposition of Hudson should be limited only to his expert opinion as set forth in his expert designation and forthcoming Rule 26(a)(2)(C) disclosures (discussed below in section IV.) so as not to allow defendant or plaintiff to revisit Ross's prior testimony.

### C. Plaintiff's New Proposed Expert Ross

In its *Supplemental Written Designation of Expert Witnesses*, plaintiff indicates Karla Ross, the leasing agent for the property, will testify as a non-retained expert as to:

1. tenant leak complaints;

2. costs associated with lost rental income;

3. rent concessions;

4. occupancy rates;

5. costs to relocate tenants during past and future construction;

6. costs of moving and storage;

7. other future ancillary costs anticipated during replacement of the roofing system; and

8. provide rebuttal testimony to defendant's experts' opinions on "liability, causation, and/or damage issues related to the roof and property," as well as to all other alleged damages and evaluations.

As discussed above with regard to Hudson, plaintiff did not previously identify lost rental income or rent concessions as subjects for expert opinion or designate an expert to testify as to these types of economic damages (not physical damages "to the property."). Likewise, plaintiff did not previously identify the other damages issues it now seeks to designate as subjects for *expert opinion and analysis*, to wit: costs to relocate tenants (past and future), costs of moving and storage, and other ancillary costs

anticipated during the future replacement of the roofing system. Again, as with Hudson, plaintiff has not explained why it did not previously and timely designate Ross as a non-retained expert, or explain its failure to comply with the Scheduling Order deadline. Nor does plaintiff fully explain why these new subject matters areas of expert testimony are only now being designated.[9] As with Hudson, plaintiff's deficiencies as to Ross weigh in favor of not allowing the modification of the Scheduling Order to allow a late expert designation and late identification of these subject matters for expert opinion.

However, plaintiff's Rule 26(a)(1) disclosures did identify as elements of its claimed damages "loss of tenants and rents, costs to relocate tenants . . . ." [ECF 29-1 at 47]. Defendant thereafter served interrogatories on plaintiff, one of which inquired into these elements of claimed damages. While designating an expert out-of-time to testify as to these topics may have been unexpected, defendant cannot claim the fact that plaintiff intends to prove it has been damaged by defendant's alleged acts is a surprise. To the extent the late designation was unexpected, any prejudice to defendant is diminished by the fact that the parties have exchanged some documents as to plaintiff's alleged damages and costs.

It is the undersigned's understanding that defendant McKELLY has deposed Ross. Like Hudson, it is unclear whether defendant deposed Ross on the subject matters plaintiff now proposes as new topics for expert opinion from Ross. Again, having deposed Ross as a fact witness rather than as an expert witness, defendant presumably only inquired as to Ross's knowledge of the facts of these subjects and would not have inquired as to Ross's expert opinions or analysis in these subject matters. Such an incomplete deposition because of plaintiff's failure to timely designate both Ross and the subject matters on which she would give expert opinion, results in prejudice to defendant.

Again, however, a new Scheduling Order must be entered in this case, thereby continuing the case and allowing defendant an opportunity to re-depose Ross as to her expert opinions on these new subject matters. Moreover, as the undersigned's recommendation (discussed below in section IV.) provides that all additional discovery costs incurred as a result of this untimely expert designation will be borne by

---

[9]Plaintiff states simply, "Tenant leak complaints and preliminary scopes of costs for past and future damages associated with business interruption and lost rents were disclosed in December 2017 and February 2018."

plaintiff, the prejudice to defendant of modifying the scheduling order to allow Ross's late expert designation on these new designated subject matters is greatly diminished.

Finally, with regard to plaintiff's designation of Ross to give rebuttal testimony to defendant's experts' opinions on "liability, causation, and/or damage issues related to the roof and property," as well as to all other alleged damages and evaluations, the undersigned finds plaintiff's original expert designation stated that it reserved the right to call any expert for the purpose of rebuttal testimony. [ECF 10 at 3].

Based on the above findings, the undersigned recommends *Plaintiff's Motion for Leave to Amend Expert Designation* be GRANTED as follows:

> Karla Ross may be designated as a non-retained expert to give expert opinion and analysis as to tenant leak complaints, lost rental income, rent concessions, occupancy rates, costs to relocate tenants during past and future construction, costs of moving and storage, and other future ancillary costs anticipated during the replacement of the roofing system, and to provide rebuttal testimony to defendant's experts.

It is further recommended:

> Any supplemental deposition of Ross should be limited only to her expert opinion as set forth in her expert designation and forthcoming Rule 26(a)(2)(C) disclosures (discussed below in section IV.) so as not to allow defendant or plaintiff to revisit Ross's prior testimony.

### D.  Plaintiff's New Proposed Expert Netardus

Due to the parties' agreement, the undersigned recommends *Plaintiff's Motion for Leave to Amend Expert Designation* be GRANTED as follows:  Kelly Utsinger may be deleted as a non-retained expert, and Kenneth Netardus may be designated as a non-retained expert to provide expert opinion as to attorneys' fees.

### E.  Plaintiff's Previously Designated Experts Stone and Mansville

As a result of plaintiff's withdrawal of Monty Stone as a designated non-retained expert at the May 1, 2018 hearing, the undersigned recommends *Plaintiff's Motion for Leave to Amend Expert Designation* be DENIED to the extent it seeks to amend the expert testimony description for Stone.  If

the recommendations herein are adopted by the District Judge, plaintiff shall submit a new proposed *Supplemental Written Designation of Expert Witnesses* (see below) omitting the designation of Stone and his testimony description in full, as well as the designation of Johns Manville as a non-retained expert and his testimony description, which plaintiff also withdrew at the hearing.

## IV.
## RESTRICTIONS AND SANCTIONS

If the above recommendations are adopted by the District Judge, the undersigned further recommends the following restrictions and sanctions be imposed due to the late designation of the new non-retained experts:

1. Plaintiff is prohibited from filing any additional expert supplements;

2. If plaintiff is the prevailing party at the conclusion of this case, it shall not be awarded any costs or attorneys' fees associated with the amended designation of and the deposition(s) of the late-designated experts; and

3. Plaintiff shall reimburse defendant's reasonable and necessary costs and attorneys' fees associated with any additional expert discovery upon written proof of those coasts and fees.

*Cf. Betzel v. State Farm Lloyds*, 480 F.3d 704, 709 (5th Cir. 2007) (district judge has discretion to impose non-dispositive sanctions); *Shy v. Allied Property and Casualty Insurance*, 2016 WL 9526681 (N.D. Tex. October 12, 2016).

The undersigned is aware plaintiff is being allowed to supplement its expert designations, based on its March 12, 2018 motion for leave, even though plaintiff did not provide Rule 26(a)(2)(C) disclosures by the February 9, 2018 deadline for any of its previously designated non-retained experts or for its new proposed non-retained experts.[10] While plaintiff was not required to provide defendant with a written report for his non-retained experts, plaintiff was required, under Rule 26(a)(2)(C), to disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." The parties have indicated plaintiff did provide defendant with

---

[10]Defendant did not file a motion to compel such disclosures.

various cost estimates from the individuals it is requesting leave to designate as non-retained experts, albeit not in the form of Rule 26(a)(2) disclosures and not including a summary of their opinions.

If the District Judge adopts the recommendations herein as to *Plaintiff's Motion for Leave to Amend Expert Designation* and allows plaintiff's late expert designations, plaintiff will be directed to provide defendant with Rule 26(a)(2)(C) disclosures for Long, Oldfield, Hudson and Ross as to the subject matters recommended herein in accord with a new Scheduling Order to be entered by the undersigned. The new Scheduling Order in this case will include a new deadline for Rule 26(a)(2)(C) disclosures, and any future failures to follow the requirements of the federal rules and the Court's Scheduling Order may result in a recommendation potentially precluding certain expert testimony in this case.

## V.
## RESUBMISSION OF PROPOSED SUPPLEMENTAL DESIGNATION

If the District Judge adopts the findings, conclusions and recommendations herein, plaintiff shall modify its proposed *Plaintiff's Supplemental Written Designation of Expert Witness* to reflect the recommendations herein and file such modified supplemental designation within fourteen (14) days of the District Judge's order regarding the Findings, Conclusions and Recommendation on *Plaintiff's Motion for Leave to Amend Expert Designation*.

## VI.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that *Plaintiff's Motion for Leave to Amend Expert Designation* [ECF 26] be GRANTED, IN PART, and DENIED, IN PART, as set forth above.

## VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 22, 2018.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the District Judge. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).